# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

LINDA WILLIAMSON, on behalf of            )
herself and all others similarly situated,  )
                                          )
            Plaintiff,                        )
                                          )      Case No. 09-4114-CV-C-NKL
      v.                              )
                                          )
                                          )
HARTFORD LIFE AND ACCIDENT                )
INSURANCE COMPANY,                        )
                                          )
           Defendant.                       )

## ORDER

      Plaintiff Linda Williamson claims that Defendant Hartford Life and Accident

Insurance Company failed to pay interest on insurance claims as required under a

Tennessee statute.  Pending before the Court are Williamson's motion for summary

judgment [Doc. # 89] and Hartford's motion for summary judgment [Doc. # 82].  For the

following reasons, the Court denies Williamson's motion and grants Hartford's motion.

## I.     Factual Background

      Plaintiff Linda Williamson is a Missouri citizen.  Defendant Hartford Life and

Accident Insurance Company is a Connecticut corporation authorized to do business in

Missouri.

      Hartford offers an accidental death and dismemberment insurance policy, which it

delivers to the group policyholder, Financial Services Association, in Tennessee.  Banks

1

across the country can become members of the Financial Services Association, enabling them to issue $1,000 of free insurance coverage for accidental death and dismemberment to depositors who open or retain an account. The banks pay the premiums for this coverage. Depositors can purchase additional coverage, for which premiums are periodically deducted from the depositors' accounts. For either kind of coverage, depositors need not submit individual evidence of insurability [Doc. # 29-2 at 3], and coverage is discontinued if the certificate holder's bank ceases to be a member of a participating financial organization. [Doc. # 29-2 at 14]. Depositors enrolled in either type of coverage receive a certificate of insurance. When a certificate holder makes a claim on one of these policies, Hartford is not obligated under the policy to pay out any insurance benefit until it has conducted a claim confirmation analysis to determine if the certificate holder meets all the requirements for payment.

Linda Williamson's late husband, Ben Williamson, was a depositor at a participating bank, and purchased $40,000 of accidental death and dismemberment coverage on top of the $1,000 coverage that came free with his account. Ben Williamson died in a car accident in September 2007. It is undisputed that Hartford paid the correct principal amount in a timely manner on Williamson's claim. The only dispute is whether Williamson was entitled to statutory interest on this amount.

Tennessee's statutory interest statute provides, in relevant part:

(b) Liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned.

2

(c) In all other cases, the time from which interest is to be computed shall be the day when the debt is payable, unless another day be fixed in the contract itself.

T.C.A. § 47-14-109 (1979). Prior to this 1979 amendment, Tennessee's interest statute was divided into two sections:

**47-1607. Bonds, notes, bills of exchange, and liquidated and settled accounts bearing interest--**All bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned.

**47-1608. Time from which interest to be computed.--**The time from which interest may be computed shall be the day when the debt is payable, unless another day be fixed in the contract itself.[1]

T.C.A. § 47-1607 (1956); T.C.A. § 47-1608 (1956).

Williamson has filed this lawsuit claiming that under the 1979 Amendment her insurance benefit is a "liquidated and settled account" that became "due" when her husband passed away. Williamson thus claims she is entitled to interest on the principal of her insurance benefit during the period between when her husband passed away and when Hartford completed its claim confirmation analysis.

## II.    Discussion

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

---

[1]The parties did not cite T.C.A. § 47-1607 (1956). But prior to 1979, at least one court relied on § 47-1607 in resolving a dispute similar to this one. *See Loftis v. Stuyvesant Ins. Co.*, 390 S.W.2d 722, 731 (Tenn. Ct. App. 1965).

Case 2:09-cv-04114-NKL   Document 104   Filed 06/21/12   Page 3 of 12

## A.     Conflict of law

"In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008).  Williamson argues that Tennessee law governs this transaction because under the Missouri Supreme Court's holding in *Miller v. Home Ins. Co.*, 605 S.W.2d 778, 780 (Mo. 1980) (en banc), Missouri courts construing group insurance contracts apply the law of the state where the policy was delivered to the group policy holder, rather than the law of the state of the individual who has been given a certificate by the group policy holder.  Because Hartford delivered its policy to a Tennessee group policy holder, Financial Services Association, which delivered an individual certificate to Williamson's husband in Missouri, Williamson argues that *Miller* requires the Court to apply Tennessee law in this case.  Hartford argues that Missouri courts overruled *Miller* by adopting the "most significant relationship" test articulated in the Second Restatement of Conflict of Laws.

Williamson agrees that the "most significant relationship" test now governs conflict-of-law issues for insurance contracts generally, but argues that *Miller* is still good law with regard to group contracts.  Williamson points out that the Missouri Supreme Court decided *Miller* after Missouri courts adopted the "most significant relationship" test for contract cases.  *See Nat'l Starch and Chem. Corp. v. Newman*, 577 S.W.2d 99, 102 (Mo. Ct. App.) (1979).  Williamson also cites *Buck v. Am. States Life Ins. Co.*, 723 F. Supp. 155, 159 n.1 (E.D. Mo. 1989), in which Judge Nangle of the Eastern District of

4

Missouri conducted a survey of Missouri law and appeared to conclude that *Miller* remained good law, albeit only with regard to group insurance contracts. Finally, Williamson claims that courts applying Missouri law have continued to apply the holding in *Miller* to group insurance contracts long after Missouri adopted the "most significant relationship" test for contracts, citing *Armstrong v. Aetna Life Ins. Co.*, 128 F.3d 1263, 1266 (8th Cir. 1997) (applying Missouri law), and *Hamilton v. Standard Ins. Co.*, 516 F.3d 1069, 1073 (8th Cir. 2008) (discussing Missouri law).

Hartford has not produced a Missouri case applying the "most significant relationship" test, instead of the rule in *Miller*, to a group contract case. Rather, Hartford cites *Shelton v. Annuity Bd. of S. Baptist Convention*, 915 F. Supp. 124, 128 (E.D. Mo. 1996), *aff'd*, 109 F.3d 466, 468 (8th Cir. 1997) (issue not raise on appeal), in which the court recognized confusion in Missouri courts on which test to apply to insurance contracts, and then appeared to avoid the question by noting that both tests required application of Texas law on the facts of that case. Thus, the court in *Shelton* did not apply the "most significant relationship" test to a group contract.

The Court is persuaded that *Miller* remains good law in Missouri with regard to group insurance contracts. The Missouri Supreme Court decided *Miller* after Missouri adopted the Second Restatement for contract cases, and courts have continued to apply *Miller* to group insurance cases long after Missouri adopted the Second Restatement for contract cases.

5

Hartford next argues that the parties' insurance contract should not be treated as a group contract under Missouri law, and thus the Court should apply the "most significant relationship" test rather than the *Miller* rule. Hartford relies on two Nevada cases finding that policies facially structured as group policies should not be treated as such because they were marketed on an individual basis to diverse groups, *see Daniels v. Nat'l Home Life Assur.*, 747 P.2d 897, 899-900 (Nev. 1987); *Hummel v. Cont'l Cas. Ins. Co.*, 254 F. Supp. 2d 1183, 1187 (D. Nev. 2003) (applying Nevada law). But in Missouri, the hallmarks of individual policies are (1) individualized application; (2) discontinued availability to individuals who have left the insured group; and (3) premiums "borne entirely" by the individual policy holder. *See Kyte v. Fireman's Fund Am. Ins. Co.'s*, 549 S.W.2d 366, 367 (Mo. Ct. App. 1977). To be insured under this policy, Williamson did not have to apply or show evidence of insurability. Further, individuals belonging to this policy could not continue coverage when they ceased to be a member of a participating financial organization. Finally, Williamson's husband did not pay any premium on his first $1,000 of coverage under this policy, although premiums were periodically deducted from his account for the additional $40,000 of coverage that he purchased. Thus, the premiums were not "borne entirely" by Williamson's husband. The Court concludes that the balance of these factors reveals that Williamson's policy is predominately a group policy under Missouri law, and the *Miller* rule applies.[2]

---

[2] Because the Court finds that *Miller* applies to require the application of Tennessee law, the Court need not address the parties' arguments concerning whether Missouri or Tennessee has the most significant interest to the parties' transaction.

6

Hartford also argues that Missouri law controls because this case turns on the interpretation of a state statute. Therefore, normal conflict of law rules articulated in *Miller* don't apply. Hartford relies for this argument on *Hamilton v. Standard Ins. Co.*, 516 F.3d 1069 (8th Cir. 2008). The plaintiff in *Hamilton* held a certificate from a group insurance policy issued to the group holder in Idaho. *Id*. at 1072. The question before the court was whether a Missouri statute regulating suicide-exclusion provisions in insurance policies applied to a Missouri resident who received in Missouri a certificate of insurance for a group policy issued to the group policyholder in Idaho. The statute in question limited suicide-exclusions to one year if the policy was "issued . . . to a citizen of [Missouri]." *Id*. The Eighth Circuit held that as a matter of statutory interpretation, the statute did not apply to the Missouri plaintiff because his group policy was "issued" to the group policyholder in Idaho; the place where the certificate of insurance was sent was not controlling. *Id*. As support for this point, the court cited *Miller*. It also rejected the reasoning of two Missouri district court cases because they dealt with a choice of law analysis and not a question of statutory interpretation.

*Hamilton* does not support Hartford's argument. The Eighth Circuit never said or implied that a choice of law analysis should not be used to determine whether the statute of one state should control instead of the statue of a different state. In fact, there was no dispute about whether Missouri or Idaho law controlled. Rather, *Hamilton* actually supports the Court's conclusion because it found that the policy was issued to the Idaho

7

group owner rather than the Missouri certificate owner and it relied on *Miller* to support that conclusion.

The Court will therefore apply Tennessee law to this dispute involving a group life insurance policy issued to the group policy holder in Tennessee.

## B.    Effect of Tennessee's Prejudgment Interest Statute

The substantive dispute between the parties is whether Tennessee law requires Hartford to pay prejudgment interest from the date of Mr. Williamson's death or from the date when Hartford processed Williamson's claim and determined it was a valid claim. The controlling statute is  T.C.A. § 47-14-109.   As previously indicated, it reads in relevant part:

> (b) Liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned.

> (c) In all other cases, the time from which interest is to be computed shall be the day when the debt is payable, unless another day be fixed in the contract itself.

T.C.A. § 47-14-109 (1979).

Williamson argues that her insurance benefit is a "liquidated and settled account," and that interest began accruing on her benefit when the benefit became "due" as per T.C.A. § 47-14-109(b) (1979), rather than when it became "payable" as per T.C.A. § 47-14-109(c) (1979).  Williamson argues that under the terms of her policy, her benefit became "due" upon her husband's death and "payable" after Hartford completed its claim

8

confirmation process, and that she is thus entitled to the interest that accrued on her benefit in the time between these two events.

Hartford contends that statutory interest on an accidental death policy only begins when Hartford's liability is both due and payable. Therefore, until Hartford determines that it is required to pay on the policy, no statutory interest accrues. For this proposition, Hartford relies on a number of Tennessee cases which use the term "due and payable" to determine when prejudgment interest accrues.

It is true that T.C.A. § 47-14-109 (1979) makes a distinction between claims that are due and claims that are payable. The former standard applies if the account is liquidated and settled and the latter when they are not liquidated and settled. [3] It is also true that Tennessee courts have held that life insurance policies and fire insurance policies are liquidated and settled. *See, People's Bank and Trust Co. v. United States Fid. and Guar. Co.,* 3 S.W.2d 163, 164 (Tenn. 1928). Therefore, the better argument is that the prejudgment interest on an accidental death policy begins to accrue when the obligation is "due."

The problem is that Tennessee courts have persistently said that the statutory interest on similar policies begins to run when the insurance policy is "due and payable," but have not clarified whether the term "due" and "due and payable" mean something different. *See, People's Bank and Trust Co v. United States Fid. and Guar. Co.,* 3 S.W.2d 163, 164 (Tenn. 1928), *Dushan v. Metropolitan Life Ins. Co.,* 1931 WL 1613 at

---

[3] There is a third category involving negotiable and non-negotiable instruments but that section of the statute is not relevant to this dispute.

*9 (Tenn. Ct. of App. 1934), *Penn. Lumbermen's Mut. Fire Ins. Co. v. Holt,* 223 S.W.2d

203, 207 (Tenn. Ct. of App. 1949), *Loftis v. Stuyvesant Ins. Co.,* 390 S.W.2d 722, 731

(Tenn. Ct. of App. 1964).[4]  And at least one Tennessee court has continued to use the

term "due and payable" as the trigger for prejudgment interest, even after the statute was

changed in 1979, suggesting Tennessee's historical application of the prejudgment

interest statute was not changed by the 1979 amendment.  *See McCandless v. Equitable*

*Life Ins. Co. of Iowa,* 721 S.W. 2d 809, 813 (Tenn. Ct. of App. 1986).

 Unfortunately, none of these Tennessee cases specifically identify the event or date

that makes an insurance policy "due and payable."  Therefore, it is difficult to understand

what the Tennessee courts mean when they use  the term "due and payable."  It is simply

not clear  whether "due and payable" in their opinion means the same thing as the

statutory term "due" or if it means that the policies are not liquidated until contractual

contingencies are satisfied or something entirely different.

  However, at least one federal court interpreting an earlier version of T.C.A. § 47-

14-109(b) (1979), has made clear that the interest on the insurance policy began to run

from the date when the insurance company completed its claims process.  *See, Goodson v.*

*American Home Assur. Co.*, 381 F.2d 6 (6th Cir. 1967) (applying Tennessee law).  There,

---

[4]Williamson cites to two Tennessee cases that only use the term due.  They are *Tennessee Farmers Mut. Ins. Co. v. Cherry,* 374 S.W.2d 371,372 (Tenn. 1964) and *Genesco, Inc. v. Liberty Mut. Ins. Co.,* 235 F.Supp. 363, 364 (M.D. Tenn. 1964).  However, in neither of those cases did the Tennessee court have to address the meaning of the word "due" because the obligation in dispute was not a settled and liquidated account.  Therefore, they offer no guidance as to the meaning of the term "due," and whether it means something different from "due and payable" as that phrase has been used by other Tennessee courts.

10

plaintiffs sought $100,000 on an accidental death and dismemberment policy. *Id.* at 7. Under the parties' policy, the policyholder could not bring an action on the policy until sixty days after the policyholder furnished proof of loss, which the court calculated to be March 9, 1965. *Id.* The district court found that defendant was liable for the $100,000 insurance benefit, but denied prejudgement interest on that benefit as a matter of discretion. *Id.*

The Sixth Circuit upheld the district court's finding of liability, but reversed the denial of interest, and allowed prejudgment interest from March 9, 1965. *Id.* The Sixth Circuit cited T.C.A. § 47-14-107 (1964), a substantially similar predecessor to T.C.A. § 47-14-109(b) in that it provided that interest accrues on "liquidated and settled accounts" from the date they are "due." Further, the Sixth Circuit never made a reference in its opinion to the term "due and payable." *Goodson* thus stands for the proposition that when the parties' accidental death and dismemberment insurance policy allows time for the insurance company to investigate claims, the policy does not become "due" until after the insurance company has satisfied its right under the policy to investigate. Thus, even when a court uses the standard advocated by Williamson, "due" rather than "due and payable," it still clearly held that when an insurance company is permitted by its policy to do an investigation to determine the validity of a claim under the policy, the statutory interest does not accrue until that investigation is completed.

Here, Williamson admits that, once Williamson submitted proof of loss, Hartford had "the contractual right to engage in a confirmation process." [Doc. # 90 at 18-19].

11

Further, it is undisputed that Hartford timely paid Williamson's insurance benefit after completing that confirmation process. Thus, under the reasoning of *Goodson*, Hartford paid Williamson when the benefit was "due" and no interest accrued on the benefit under § 109(b).

There is obviously some confusion in Tennessee courts concerning the meaning of the terms "due" and "payable" in § 109 and its predecessors. Nonetheless, the Court is confident that if a Tennessee court were to confront this same dispute between Williamson and Hartford, it would reach the same conclusion made here.

## III. Conclusion

Accordingly, it is hereby ORDERED that Williamson's motion for summary judgment [Doc. # 89] is DENIED and Hartford's motion for summary judgment [Doc. # 82] is GRANTED.

> s/ Nanette K. Laughrey
> NANETTE K. LAUGHREY
> United States District Judge

Dated: June 21, 2012
Jefferson City, Missouri

Case 2:09-cv-04114-NKL   Document 104   Filed 06/21/12   Page 12 of 12